HENRY J. CONLEY, Assignee, *vs.* DAVID F. MURDOCK.

Cumberland.    Opinion December 13, 1909.

*Insolvency. Assignment. Rights of Assignee. Intoxicating Liquors. Chattel Mortgages. Replacing Stock. Preferences. Estoppel. Instructions.*

In the absence of fraud an assignee in insolvency takes only the property rights and interests of the debtor.

An instruction that an assignee in insolvency took the assignor's rights and disabilities was not prejudicial error for ignoring the question of fraud where there was no evidence of fraud.

A mortgage of an entire stock of drugs is not unlawful as to the mortgagee because the stock included intoxicating liquors if he did not know thereof.

The assignee of an insolvent mortgagor of a stock of drugs is estopped to attack the transaction as unlawful because the stock included intoxicating liquors, where the mortgagee relied on the mortgagor's statement that there were no such liquors in the stock.

Under the rule that the law will leave the parties to an illegal contract where it finds them, the assignee of an insolvent chattel mortgagor cannot recover the property on the ground that it was an unlawful transaction if it was unlawful as to both parties.

Under a chattel mortgage of a stock of goods permitting the mortgagors to make retail sales and buy for cash other goods to replace those sold, the mortgagors could remain in possession, and make sales in the ordinary course of business, on condition that the proceeds should be used to replace the goods, so as to prevent impairment of the mortgagee's security, but an unpaid for folding couch, carpet, movable office, and clothes-press bought on credit, and placed in the store after the mortgage and not bought to replace mortgaged stock, are not covered by the mortgage.

Under a chattel mortgage of a stock of goods permitting the mortgagors to make retail sales and buy for cash other goods to replace those sold, neither the mortgagors nor their assignee in insolvency could recover against the mortgagee on the theory that they have not used the proceeds to purchase new goods, but bought new goods on credit so that they would not be subject to the mortgage.

The taking of possession of a stock of goods by the mortgagee thereof under a mortgage given before the mortgagor's insolvency was not the acceptance of a voidable preference.

On motion and exceptions by plaintiff.  Motion sustained. Exceptions overruled.

Action of trover brought in the Superior Court, Cumberland County, by the plaintiff as assignee in insolvency of Charles F. Landers, an insolvent debtor, to recover the value of a certain stock of druggist's goods, fixtures and furniture claimed by the assignee to belong to the insolvent estate.  Plea, the general issue. Verdict for defendant.  Plaintiff excepted to several rulings during the trial and also filed a general motion for a new trial.

The case is stated in the opinion.

*Henry J. Conley, and Peabody & Peabody,* for plaintiff.

*M. P. Frank, and C. E. Gurney,* for defendant.

SITTING:  WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, BIRD, JJ.

WHITEHOUSE, J.  This was an action of trover brought by the plaintiff as assignee in insolvency of Charles F. Landers, an insolvent debtor, to recover the value of a certain stock of druggist's goods, fixtures and furniture claimed by the assignee to belong to the insolvent estate.  The contention of the defendant was that the goods were included in the terms of a certain mortgage given to the defendant by Landers and Babbage, co-partners, in March, 1895, more than two years prior to the insolvency and that the defendant

took possession of the goods by virtue of the mortgage, and with the consent of the mortgagor on the 9th day of August, 1897, on the day of the petition in insolvency but before the petition was drawn, and subsequently perfected his title by foreclosure. Babbage disposed of his interest to Landers and withdrew from the partnership several months prior to the defendant's taking possession of the goods.

The plaintiff's contentions were, first, that the stock of goods covered by the mortgage in question to the defendant included a quantity of intoxicating liquors and that the mortgage sale was therefore made in violation of the statutes of Maine, illegal and void and that the act of the insolvent in delivering the goods to the defendant, as well as the act of the defendant in taking possession of them, a few hours before the filing of the petition in insolvency was in fact a transfer of the property prohibited by law as a preference, and consequently that the goods described in the writ were not legally or equitably included within the terms of the mortgage.

As described in the mortgage the goods consisted of the entire stock in trade and of the fixtures, furniture, screens, screen doors, and all other goods and chattels contained in the store therein designated. The mortgage contained the following proviso : "It shall and may be lawful for the said Landers and Babbage to continue in possession of all and singular, the aforesaid goods and chattels and make sales of the same at retail in the usual course of business and with the proceeds of such sales to buy for cash other goods and chattels which shall stand for and in the place of the goods and chattels so sold and to be covered by this mortgage." The plaintiffs contended and there was evidence tending to show that the mortgagors after the date of the mortgage from time to time made additions to the stock in trade by the purchase of druggists' goods on credit which have never been paid for, and also by the purchase from time to time of fixtures, furniture and other chattels not of the nature of stock in trade and not paid for which though placed in the store, the plaintiff claims were not subject to the terms or lien of the mortgage.

The verdict was for the defendant and the case comes to this court on the plaintiff's exceptions to the rulings and instructions of the presiding Judge and to his refusal to give certain requested instructions; and also upon a motion to set aside the verdict as against the evidence.

In the absence of fraud, the plaintiff as assignee in insolvency took only the property rights and interests of the insolvent debtor. There was no evidence of fraud, actual or constructive on the part of the defendant and the instruction of the presiding Judge that "whatever rights Mr. Landers had, his assignee and representative had and whatever disabilities Mr. Landers was under by reason of an illegal contract or otherwise, the plaintiff was under, as his assignee," was correct as applied to the facts of this case. The qualifying phrase "in the absence of fraud" would doubtless be requisite to render the statement complete and legally correct as a general proposition of law, but it was unnecessary and therefore not prejudicial under the circumstances of this case. *Deering* v. *Cobb*, 74 Maine, 332.

With respect to the plaintiff's contention that intoxicating liquors were included in the stock of goods covered by the mortgage at the time it was given, the presiding Judge instructed the jury as follows :

"Of course, gentlemen, you will inquire in respect to the validity of this mortgage. I have already instructed you that if the goods covered by the mortgage contained intoxicating liquors it would make the mortgage illegal. But it would not be illegal, so far as Mr. Murdock is concerned, if he did not know intoxicating liquors were there; if in good faith he did not know they were there, and those liquors were in the store, the transaction would not be illegal so far as he is concerned.

"But another principle of law is involved here. Where two parties to an illegal transaction, as I have already explained to you, are equally guilty, both being cognizant of the fact, and one happens to be in a better position than the other, the law always leaves them just where they are. And so here, if two men are parties to a sale of goods which includes intoxicating liquors, and one of the men gets possession of the entire property, if the trans-

action was originally legal, tainted by the presence of intoxicating liquors in the merchandise sold, why the law leaves the parties just where it finds them."

There is no exceptionable error in these instructions. The entire stock in trade and fixtures were mortgaged without an inventory. The transaction was in legal effect the sale of an entire stock for an entire purchase price. Every sale of property is effected by a contract between the parties, and every true contract is the result of the mutual intention and understanding of the parties. It would violate the elementary principles of contracts and pervert the obvious meaning of terms to hold that one may be legally made a purchaser of intoxicating liquors without his knowledge or consent, and have a bona fide purchase of an entire stock of legitimate merchandise tainted with illegality by the subsequent discovery of a quantity of intoxicating liquors which he never intentionally bargained for. Such a doctrine is so repugnant to all considerations of reason and justice that it appears to have remained without the sanction of judicial authority. It is manifestly distinguishable from the rule adopted in criminal prosecutions under the statute as illustrated by *State* v. *Eaton*, 97 Maine, 289. It was there held that if one sells liquors which are in fact intoxicating, but which he believes are not intoxicating, he nevertheless violates the statute because the prohibition is not limited to knowingly selling without authority. But the purchaser of an entire stock without knowledge that it contains intoxicating liquors does not participate in the wrong of the seller who has knowledge of that fact.

But even if it be assumed that the mortgage was rendered illegal as to the defendant as well as the mortgagor on account of the presence of intoxicating liquors in the stock, of which the defendant was entirely ignorant and that the instruction was technically erroneous, it was not prejudicial to the plaintiff. The evidence is undisputed that both at the time the defendant took the mortgage, and at the time he took legal possession of the goods, Landers, one of the mortgagors, stated to him that there were no intoxicating liquors in the stock. By the covenants in the mortgage itself, the mortgagors also declared that they had "good right and lawful

authority to dispose of" all the goods in the store at that time covered by the mortgage. The defendant testifies that he had no knowledge that there were any intoxicating liquors in the store at that time, and there is no evidence in the case that he did have such knowledge. Relying upon the statement of Landers that there were no intoxicating liquors in the stock, the defendant advanced $2500, as the consideration of the mortgage. In that situation the plaintiff is debarred by the familiar principles of equitable estoppel from now taking a contrary position by asserting the presence of intoxicating liquors in the stock at that time to the great detriment of the defendant.

Again assuming that there were intoxicating liquors in the stock to the knowledge of both parties and that the whole transaction was tainted with illegality as to both, the defendant is protected by the uniformly accepted principle of law crystalized in the maxim "In pari delicto potior est conditio defendentis." By virtue of this rule, the law does not seek to give validity to the transaction, but to deprive the parties of all right to have either enforcement of or relief from the illegal agreement. *Groton* v. *Waldoborough*, 11 Maine, 306 ; 9 Cyc. of Law and Proc. 546. And "where a contract made in violation of law has been executed, courts will not lend their aid to compel one party to restore the other to the condition which he held before the contract, unless the statute has made some provision for such a purpose." *Andrews* v. *Marshall*, 48 Maine, 30. Briefly stated the rule is that the law will not aid either party to an illegal contract, but leave the parties where it found them. Thus whether the jury found the contract to be legal or illegal, the plaintiff was not legally aggrieved by the instructions under consideration.

The plaintiff also has exceptions to the refusal of the presiding Judge to give the following requested instructions, to wit: "Goods and chattels purchased after the date of a chattel mortgage as additions to the mortgaged stock and not paid for, or not paid for from the proceeds of the sales of the stock, cannot be held under a mortgage which provides that goods and chattels may be bought

with the proceeds of sales from the mortgaged stock for cash and so stand for and in the place of the goods and chattels so sold and be covered by the mortgage.

"Property acquired after the date of a mortgage is not covered by the mortgage unless its terms expressly provide that it shall cover it and unless the mortgagee shall take possession of such after-acquired property before the date of insolvency of the mortgagor or before the rights of third parties intervene. Nor then if the mortgagee took possession of such after-acquired property within four months prior to the insolvency proceedings, having knowledge or reasonable grounds of believing that the mortgagor was insolvent."

The instructions were properly refused. The obvious meaning of the provision in the mortgage is that the mortgagor may continue in possession of the stock and make sales of the same at retail in the ordinary course of business, on condition that with the proceeds of such sales they buy for cash other goods and chattels which shall take the place of those sold and be covered by the mortgage. By continuing in possession and carrying on the business they came under obligation to use the proceeds from these sales to purchase for cash other goods to take the place of those sold. The obvious purpose of the agreement was to prevent the impairment of the defendant's security by requiring the stock to be kept up substantially to its value at the date of the mortgage. The mortgagors continued in possession for more than two years and the defendant appears to have believed that they were observing their covenant in good faith by purchasing for cash new goods to take the place of those sold, and were thus keeping the stock up to its value at the date of the mortgage, and he was thereby induced to delay taking possession until the stock was so reduced that he eventually realized but $1100 from his loan of $2500, which appears to have been the actual cash value of the goods at the date of the mortgage. The case is thus brought within the principle of estoppel, applied in *Allen* v. *Goodnow*, 71 Maine, 420, and as there stated, the mortgagors could not, and the plaintiff cannot be permitted to set up in defense that they "had not used the proceeds from the sales of

the stock to purchase the new goods put into the store, as it was their duty to do, but had appropriated it to their own use and bought the goods on credit so that they would not be subject to the mortgage. The law will not sustain a defence so manifestly unjust."

The defendant took and retained possession of the stock by virtue of his mortgage. This was not the acceptance of a preference, but the assertion of a right previously acquired under the mortgage, and it was effectual against the plaintiff and those whom he represents. 6 Cyc. of Law & Proc. 1051; *Burrill* v. *Whitcomb*, 100 Maine, 286; *Chase* v. *Denny*, 130 Mass. 566. In the last named case the court say : "If the after acquired property is taken by the mortgagee into his possession before the intervention of any rights of third persons, he holds it under a valid lien by the operation of the provision of the mortgage in regard to it. . . . . Such taking of possession, though effected immediately before insolvency proceedings were instituted, and with full knowledge of the insolvency of the mortgagor, would not be the acceptance of a preference, but the assertion of a right which had been previously acquired by the mortgagee under an instrument in writing made when the parties to it were both competent to contract, and when there was no qualification of the right of either to deal with the other."

The conclusion is from this view of the law applicable to the facts of this case that the plaintiff was not aggrieved by any rulings, instruction or refusal to instruct by the presiding Judge, and that all of the exceptions must be overruled.

But it is equally clear that the motion to set aside the verdict as against the evidence must be sustained. It is shown by uncontroverted testimony that a folding couch valued at $15, a carpet valued at $13, a movable office valued at $35, and a clothes-press valued at $8, were among the things which came into the possession of the defendant. They had been purchased on credit and placed in the store after the date of the mortgage and had never been paid for. It does not appear that they were put in to replace any

VOL. CVI 18

of the mortgaged stock.    The terms of the mortgage did not require the mortgagors to pay cash for those articles in order to keep the defendant's security unimpaired and they did not become subject to the mortgage lien.

*Motion sustained.*
*New trial granted.*